UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

MELLISA FARAONE                              :
                                             :
          v.                                 :          C.A. No. 13-073ML
                                             :
CAROLYN COLVIN                               :
Commissioner of the Social Security          :
Administration                               :

## REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge

This matter is before the Court for judicial review of a final decision of the Commissioner of

the Social Security Administration ("Commissioner") denying Social Security Disability Insurance

("SSDI") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g).  Plaintiff filed her Complaint

on January 31, 2013 seeking to reverse the decision of the Commissioner.  On September 30, 2013,

Plaintiff filed a Motion to Reverse the Decision of the Commissioner.  (Document No. 10).  On

November 26, 2013, the Commissioner filed a Motion for an Order Affirming the Decision of the

Commissioner.  (Document No. 12).  Plaintiff filed her Reply on December 13, 2013.  (Document No.

13).

This matter has been referred to me for preliminary review, findings and recommended

disposition.  28 U.S.C. § 636(b)(1)(B); LR Cv 72.  Based upon my review of the record, the parties'

submissions and independent research, I find that there is substantial evidence in this record to support

the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act.

Consequently, I recommend that the Commissioner's Motion for an Order Affirming the Decision of

the Commissioner (Document No. 12) be GRANTED and that Plaintiff's Motion to Reverse the Decision of the Commissioner (Document No. 10) be DENIED.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for SSDI on October 27, 2009 alleging disability since March 5, 2009. (Tr. 99-105). The application was denied initially on May 18, 2010 (Tr. 79-81) and on reconsideration on October 20, 2010. (Tr. 82-84). Plaintiff requested an Administrative hearing. (Tr. 86-87). On November 29, 2011, a hearing was held before Administrative Law Judge Gerald Resnick (the "ALJ") at which time Plaintiff's counsel and a vocational expert ("VE") appeared and testified. (Tr. 25-41). Plaintiff did not appear at the hearing but was permitted to submit a written statement. (Tr. 42-45). The ALJ issued an unfavorable decision to Plaintiff on January 5, 2012. (Tr. 7-20). The Appeals Council denied Plaintiff's Request for Review on November 30, 2012, therefore the ALJ's decision became final. (Tr. 1-5). A timely appeal was then filed with this Court.

## II. THE PARTIES' POSITIONS

Plaintiff argues that the ALJ erred by failing to afford appropriate weight to the opinions of her treating physician and by misconstruing certain vocational evidence.

The Commissioner disputes Plaintiff's claims and asserts that substantial evidence supports the ALJ's assessment of the medical opinions and the vocational evidence.

## III. THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health and

Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand

appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Id. With a sentence six remand, the parties must return to the court after remand to file modified findings of fact. Id. The court retains

jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.  Id.

## IV.    THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.    Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments, is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).  When a

treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion.  20 C.F.R § 404.1527(c).  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  See 20 C.F.R. § 404.1527(c)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527(e).  The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner.  20 C.F.R. § 404.1527(e).  See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

### B.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.    Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991).  The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained.  See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987).  The obligation to fully and fairly develop the record exists

if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

### D.    The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing

other work that exists in the national economy, then she is disabled.  20 C.F.R. § 404.1520(f).

Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner

bears the burden at step five.  Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step

process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe,

the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any

medically severe combination of impairments throughout the disability determination process.  42

U.S.C. § 423(d)(2)(B).  Accordingly, the ALJ must make specific and well-articulated findings as to

the effect of a combination of impairments when determining whether an individual is disabled.  Davis

v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by

the Social Security Act.  Seavey, 276 F.3d at 5.  The claimant must prove disability on or before the

last day of her insured status for the purposes of disability benefits.  Deblois v. Sec'y of Health and

Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c).  If a claimant becomes

disabled after she has lost insured status, her claim for disability benefits must be denied despite her

disability.  Id.

### E.     Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts

to the Commissioner to establish that the claimant could perform other work that exists in the national

economy.  Seavey, 276 F.3d at 5.  In determining whether the Commissioner has met this burden, the

ALJ must develop a full record regarding the vocational opportunities available to a claimant.  Allen

v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989).  This burden may sometimes be met through

exclusive reliance on the Medical-Vocational Guidelines (the "grids"). <u>Seavey</u>, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. <u>Id.</u>; <u>see also</u> <u>Heckler v. Campbell</u>, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. <u>Nguyen</u>, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. <u>Heggarty</u>, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. <u>See</u> <u>Ferguson v. Schweiker</u>, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1.   Pain

"Pain can constitute a significant non-exertional impairment." <u>Nguyen</u>, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including

pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with

the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and

laboratory findings show medical impairments which reasonably could be expected to produce the pain

alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following

factors:

> (1)  The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2)  Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3)  Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4)  Treatment, other than medication, for relief of pain;
>
> (5)  Functional restrictions; and
>
> (6)  The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement

as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

### 2.   Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate

specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.

Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility

finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The

failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony

be accepted as true. See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."  Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V.     APPLICATION AND ANALYSIS

Plaintiff was thirty-seven years old on the date of the ALJ's decision.  (Tr. 99-105).  Plaintiff earned her GED (Tr. 122) and worked in the relevant past as an assistant manager at a convenience store, a clerk at a discount store and a cashier and waitress at a restaurant.  (Tr. 118, 124).  Plaintiff alleges disability due to anxiety, post-traumatic stress disorder, fibromyalgia, degenerative disc disease, depression and the possibility of multiple sclerosis.  (Tr. 117).

In September and October 2009, Plaintiff underwent vocational testing and training in the Learn to Earn Employment Program ("LEEP") with Goodwill Industries of Rhode Island.  (Tr. 187-190, 266-270).  She was absent three times and late four times over the course of the evaluation.  (Tr. 266).  Following the evaluation, she was found to need improvement in her physical and emotional tolerance for a five-hour day and in arriving on time for class and when returning from break.  (Tr. 268).  The instructor concluded that, "it appears that seeking competitive employment without any medical and mental health supports [was] not realistic" for Plaintiff at that time.  (Tr. 269).

In November 2009 and May 2010, Cameron M. Biller, PA-C, completed a form, along with medical source statements in which he indicated significant limitations in Plaintiff's mental and physical capacities.  (Tr. 249-250).  He believed that she was unable to participate in work or

-11-

recreational activities due to pain and a decrease in her range of motion.  Id.  He indicated she needed

to use a cane for assistance with walking.  Id.  He concluded that she was totally disabled.  Id.

Also in May 2010, Plaintiff underwent a psychiatric examination with Louis Cerbo, Ed.D. (Tr.

225-230).   During that examination, Plaintiff's speech was normal, her thought process was

goal-directed; her thought content was absent of unusual beliefs, delusional ideation or paranoid

thoughts.  (Tr. 227).  Her reality testing was intact.  Id.  Dr. Cerbo diagnosed major depressive

disorder, recurrent, without psychotic features; PTSD, chronic type; and sexual abuse as a child.  (Tr.

228).  He assigned her a Global Assessment of Functioning ("GAF") of 47.  Id.  He noted that Plaintiff

preferred to be with friends when shopping, using public transportation or driving. (Tr. 229).  Plaintiff

was able to clean, cook and pay bills on her own.  Id.  She was able to complete Serial 3s and Serial

7s, with no signs of organicity affecting her clinical presentation.  Id.  Her intellectual abilities were

in the low average range.  Id.  He recounted that Plaintiff admitted that she became "aggravated easily"

and that her frustration tolerance was marginal, at best.  Id.

Later that month, a state agency psychologist, MaryAnn A. Paxson, Ph.D., reviewed the record,

including Dr. Cerbo's evaluation, and concluded that Plaintiff had no severe mental impairments.  (Tr.

231-244).  She found that Plaintiff had mild limitations in social functioning and concentration but no

limitations regarding activities of daily living.  (Tr. 241).  J. Stephen Clifford, Ph.D., affirmed Dr.

Paxson's assessment in August 2010.  (Tr. 259).

In April 2010, Dr. Edward Hanna reviewed the record and concluded that Plaintiff had the

physical capacity for occasionally lifting ten pounds, standing and/or walking for at least two hours

in an eight-hour workday; sitting for six hours in an eight-hour workday, never balancing and

occasionally performing other postures.  (Tr. 217-224).  Dr. Joseph Callaghan affirmed Dr. Hanna's

assessment on October 12, 2010.  (Tr. 260-261).

In July 2011, Mr. Biller completed a questionnaire in which he indicated that he believed

Plaintiff could perform less than sedentary work and would miss more than four days of work per

month.  (Tr. 277-278).  He also indicated that, in approximately 2011, Plaintiff could not sustain

competitive employment on a full-time, ongoing basis.  (Tr. 315-316).

### A.    The ALJ's Decision

The ALJ decided this case adverse to Plaintiff at Step 5.  At Step 2, the ALJ found that

Plaintiff's degenerative disc disease, fibromyalgia, asthma, obesity, depression, PTSD and anxiety

were "severe" impairments as defined in 20 C.F.R. § 416.920(c).  (Tr. 12).  He did not, however, find

at Step 3 that these impairments, either singly or in combination, met or medically equaled any of the

"Listings."  (Tr. 13-14).  As to RFC, the ALJ found that Plaintiff was capable of performing a limited

range of sedentary work and that the physical and mental demands of her past work exceeded her

present RFC.  (Tr. 14-18).  Finally, at Step 5, the ALJ concluded, based on testimony from the VE and

considering Plaintiff's age, education, work experience and RFC, that Plaintiff was capable of making

a successful adjustment to other unskilled sedentary work that exists in significant numbers in the

national economy, and thus Plaintiff was not disabled within the meaning of the Social Security Act.

(Tr. 19).

### B.    The ALJ's Assessment of the Medical Opinions

After the VE testified at the hearing, the ALJ indicated that the case turned on whether he gave

credence to the opinion of the treating provider or the opinion of the State Agency consulting

physicians.  (Tr. 39).  The ALJ ultimately chose to give "substantial weight" to the opinions of the

State Agency consulting physicians and lesser weight to the treating source opinions of Dr. Golomb[1]

and his colleague, Physician Assistant Cameron Biller.  (Tr. 16-18).  The ALJ concluded that Mr.

Biller's conclusions were not entitled to significant weight because they "fail to include sufficient

information to permit an adequate assessment of [Plaintiff's] current capacity and associated

limitations."  (Tr. 16).  As to the opinions mistakenly attributed to Dr. Golomb, the ALJ found the

assessment to be "conclusory in nature, fails to give disabling limitations and is an assessment of

[Plaintiff's] ability to engage in basic work like activities, which is an opinion reserved to the

Commissioner."  Id.  Thus, the ALJ decided not to assign the controlling weight to those opinions

which is "ordinarily assigned to a treating physician report on the claimant's abilities."  Id.  However,

the ALJ did not ignore those findings and indicated that they were "carefully considered in providing

insight as to functional ability and how they affect [Plaintiff's] ability to work."  Id.

Plaintiff argues that the ALJ failed to follow the review criteria mandated by the regulations

for treating physician opinions.  If the opinions in issue were rendered by a treating source, they should

have been subject to a heightened level of review under the so-called treating physician rule.  Because

a treating physician is typically able to provide a detailed longitudinal picture of a patient's

impairments, an opinion from a treating source is generally entitled to considerable weight if it is well

supported by clinical findings and not inconsistent with other substantial evidence of record.  20 C.F.R.

§ 404.1527(d); see also Castro v. Barnhart, 198 F. Supp. 2d 47, 54 (D. Mass. 2002) (The ALJ "may

reject a treating physician's opinion as controlling if it is inconsistent with other substantial evidence

in the record, even if that evidence consists of reports from non-treating doctors.").  The amount of

weight to which a treating source opinion is entitled depends in part on the length of the treating

---

[1]  As discussed below, the record is clear that the opinions are exclusively from Mr. Biller and not from Dr.
Golomb and thus the ALJ mistakenly refers to some as being rendered by Dr. Golomb and evaluates them as such.

relationship and the frequency of the examination.  20 C.F.R. § 404.1527(d)(1).  If a treating source's opinion is not given controlling weight, the opinion must be evaluated using the enumerated factors and "good reasons" provided by the ALJ for the level of weight given.  20 C.F.R. § 404.1527(d)(2).

Here, it is clear to me from a review of the record that the treating source opinions in issue were all rendered by Mr. Biller, a physician assistant, and not by his colleague Dr. Golomb.[2]  Although the questionnaires seeking opinions are addressed to Dr. Golomb, the signatures of the completing medical professional are consistently Mr. Biller's signature and there is no indication that they were co-signed or otherwise adopted or affirmed by Dr. Golomb. See, e.g., Tr. 248-251.  The record shows that Plaintiff was primarily seen by Mr. Biller over the years and, in fact, the record reflects only one visit on March 28, 2011 when Plaintiff was seen by Dr. Golomb for an episodic infection unrelated to the conditions underlying Plaintiff's disability application.  (Tr. 286-288).

Under 20 C.F.R. § 404.1513(a), a physician assistant, such as Mr. Biller, is not an "acceptable medical source" to establish an impairment.  However, a physician's assistant is considered an "other source."  20 C.F.R. § 404.1513(d).  Evidence from "other sources" may be used to determine the severity of impairments and how they affect the ability to work. Id.  Since the treating physician rule applies to medical opinions from "physicians and psychologists or other acceptable medical sources" and not those from a physician's assistant, the rule is technically inapplicable to Mr. Biller's various opinions and assessments.  20 C.F.R. § 404.1527(a)(2), (c).

Plaintiff anticipated this conclusion in her brief and argues in the alternative that "[i]f these opinions were indeed from Mr. Biller and not Dr. Golomb, they should be evaluated according to Social Security Ruling 06-03p."  (Document No. 10 at p. 12).  SSR 06-03p recognizes the increasing

---

[2]  This was discussed at the ALJ hearing, and the ALJ and Plaintiff's counsel agreed that it appeared that Mr. Biller and not Dr. Golomb signed the forms in issue.  (Tr. 30-31).

role of physician assistants with the growth of managed health care and indicates, <u>inter alia</u>, that the treating physician rule factors "can" be applied to opinions from "other sources."  However, it also notes that "the fact that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source.'" <u>Id.</u>

In this case, the ALJ was presented with conflicting medical evidence, <u>i.e.</u>, the opinions of Mr. Biller, a physician's assistant, versus the opinions of the consulting physicians, Dr. Hanna and Dr. Callaghan.  The ALJ considered both but chose to give substantial weight to the latter and less than significant weight to the former as authorized by SSR 06-03p. (Tr. 16, 18).  Further, since the ALJ's RFC assessment is consistent with the opinions of the consulting physicians, it is supported by substantial evidence.  <u>See</u> <u>Rivera-Torres v. Sec'y of HHS</u>, 837 F.2d 4, 5 (1st Cir. 1988) (the resolution of evidentiary conflicts is within the province of the ALJ); and <u>Machado v. Astrue,</u> No. 09-045A, 2009 WL 3837226 at *12 (D.R.I. Nov. 13, 2009) ("an ALJ may choose among competing medical opinions in the record").

Plaintiff has shown no reversible error in the ALJ's decision to credit the opinions of the consulting physicians over those of the treating physician's assistant.  The ALJ accurately observed that Mr. Biller's opinion that Plaintiff was "significantly limited" in certain respects is "conclusory in nature" and "fails to give disabling limitations."  (Tr. 16).  Plaintiff argues that the ALJ erred because Mr. Biller had access to medical records supporting the presence of "marked functional limitations." (Document No. 13 at p. 2).  In particular, Plaintiff notes that Mr. Biller had access to reports from the treating neurologist and from MRIs.  <u>Id.</u>  However, the treating neurologist reports (Tr. 172-186) are generally inconclusive and reference relatively unremarkable findings in testing and examination.

Similarly, as to the MRI results, the most recent MRI of the cervical spine showed only mild degenerative disc disease. (Tr. 167-168). Plaintiff has simply not identified objective medical evidence supporting Mr. Biller's opinion that she has marked functional limitations and thus provides no rationale for this Court to second-guess the ALJ's evaluation of conflicting medical evidence.

Plaintiff also faults the ALJ for failing to give adequate weight to the psychiatric evaluation of Dr. Cerbo, a clinical psychologist. (Tr. 225-230). The ALJ discusses the report in detail and accurately notes that Dr. Cerbo's GAF assessment of 47 (or serious symptoms) is based solely on Plaintiff's subjective complaints during the evaluation and is not supported by any objective historical data, any direct observations by Dr. Cerbo or Plaintiff's performance on any testing conducted by Dr. Cerbo. (Tr. 17-18). In fact, Dr. Cerbo opined that Plaintiff would benefit from "outpatient counseling," that her intellect was in the low average range, and that she had no impairment in her ability to concentrate. (Tr. 229). While he did find that Plaintiff's frustration tolerance was "marginal, at best," the ALJ accurately observed that this conclusion was based solely on Plaintiff's subjective report of becoming aggravated easily and breaking things when frustrated. Id. Again, Plaintiff has shown no error in the ALJ's evaluation of Dr. Cerbo's report. In addition, the ALJ did not completely reject Dr. Cerbo's findings and incorporated several non-exertional limitations into Plaintiff's RFC. (Tr. 15).

### C.    The ALJ's Assessment of the Goodwill Vocational Evaluation

Plaintiff participated in the Learn to Earn Employment Program ("LEEP") administered by Goodwill Industries. (Tr. 266-276). The ALJ reviewed the final report from the LEEP program and found that it "revealed that [Plaintiff] demonstrated a variety of skills that could be utilized in different settings." (Tr. 17, 269).

The ALJ accurately observed that the final report indicated that, during the LEEP program, Plaintiff "participated in discussions and activities, was appropriately dressed for the classroom, appeared confident in the classroom setting, behaved courteously, respected the rights of others, behaved in a friendly and social way, accepted structure" and is "a bright person that has a variety of marketable skills." Id.  Although Plaintiff was absent three times and late four times during the program, she "completed the LEEP program and received certificate of completion." (Tr. 269).  The ALJ concluded that "the testing was generally consistent with the ability to work although apparently based upon [Plaintiff's] tardiness and absences that she needed improvement for a five-hour workday." (Tr. 17).

It is undisputed that the Goodwill report was generated by a "non-medical source" and thus is not entitled to any particular level of weight or deference.  SSR 06-03p at *2.  It is also undisputable that the ALJ reviewed the report in detail with the VE who testified that "it doesn't sound very conclusive." (Tr. 38).  While reasonable minds could differ as to the interpretation of the Goodwill report, the report is far from clear and the issue presented in this administrative appeal is not whether this Court would have reached the same conclusion as did the ALJ.  "The ALJ's resolution of evidentiary conflicts must be upheld if supported by substantial evidence, even if contrary results might have been tenable also." Benetti v. Barnhard, 193 F. App'x 6, 7 (1st Cir. 2006) (per curiam) (citing Rodriguez Pagan, 819 F.2d at 1).  Rather, the narrow issue presented is whether the ALJ's findings have adequate support in the record.  Since they do in this case, there is no basis upon which to reject such findings.  The ALJ thoroughly explained his reasoning.  Plaintiff has simply not shown the existence of reversible error in the ALJ's evaluation of the Goodwill report.  Therefore, the ALJ's finding is entitled to deference and must be upheld.

-18-

## VI.   CONCLUSION

For the reasons discussed herein, I recommend that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 12) be GRANTED and that Plaintiff's Motion for an Order Reversing Decision of the Commissioner (Document No. 10) be DENIED. Further, I recommend that Final Judgment enter in favor of Defendant.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt.   See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.   See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
February 11, 2014